OPINION
{¶ 1} Defendant-appellant, Isael Roman III, appeals from a Mahoning County Common Pleas Court judgment denying his motion to withdraw his guilty plea to charges of attempted aggravated murder, aggravated robbery, and kidnapping, and sentencing him on those convictions.
 {¶ 2} On March 31, 2004, a complaint was filed in juvenile court alleging that appellant, who was 16 at the time, was a delinquent child for committing the acts of attempted aggravated murder, aggravated robbery, and kidnapping, all with firearm specifications. The allegations stemmed from the March 30 shooting of Jihad Mahd and kidnapping of Mohammed Mahd during a robbery of the Big Apple Convenience Store in Youngstown.
 {¶ 3} On September 25, 2004, the juvenile court held a bindover hearing. It determined that appellant was 16 at the time of the conduct charged and that there was probable cause to believe that appellant committed the acts charged. Therefore, on November 16, 2004, the juvenile court bound appellant over to the general division of the common pleas court.
 {¶ 4} On January 6, 2005, a Mahoning County grand jury indicted appellant on one count of attempted aggravated murder, a first-degree felony in violation of R.C. 2923.02(A)(E) and R.C. 2903.01(B)(D), one count of aggravated robbery, a first-degree felony in violation of R.C.2911.01(A)(1)(3)(C), and one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(2)(C). All charges also carried firearm specifications in violation of R.C. 2941.145(A).
 {¶ 5} On January 19, 2005, appellant executed a speedy trial waiver. His trial date was continued numerous times due to things such as appointment of new counsel, further exploration of plea discussions, completing discovery, and another criminal trial in the court.
 {¶ 6} The trial was finally set to proceed on January 9, 2006. But on January 4, appellant entered a guilty plea to all charges.
 {¶ 7} The court held a sentencing hearing on February 21, 2006. That same day, prior to sentencing, appellant filed a motion to withdraw his plea. The motion gave no reasons for appellant's wish to withdraw his plea. The court determined that *Page 2 
appellant's motion was untimely and that there was no adequate basis to allow him to withdraw his plea. Therefore, the court denied appellant's motion and proceeded with sentencing.
 {¶ 8} The court sentenced appellant to five years on each of the three counts. It also sentenced appellant to three years on the firearm specifications, which it merged together. It then ordered the sentences to be served consecutively for a total of 18 years.
 {¶ 9} Appellant filed a timely notice of appeal on February 28, 2006.
 {¶ 10} Appellant raises six assignments of error. Because his second assignment of error is dispositive, we will discuss it first. It states:
 {¶ 11} "DEFENDANT APPELLANT'S PLEA OF GUILTY WAS UNCONSTITUTIONAL UNDER BOTH THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION AS THE SAME WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE."
 {¶ 12} Here appellant argues that he did not enter his plea knowingly, voluntarily, and intelligently.
 {¶ 13} Before accepting a guilty plea to a felony from a defendant, the trial court must engage appellant in a colloquy pursuant to Crim.R. 11(C)(2). The Rule provides:
 {¶ 14} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 15} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 16} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 17} "(c) Informing the defendant and determining that the defendant *Page 3 
understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2).
 {¶ 18} This court explained the requirements of Crim.R. 11(C) inState v. Green, 7th Dist. No. 02-CA-217, 2004-Ohio-6371, at ¶ 11, as follows:
 {¶ 19} "A trial court must strictly comply with the provisions of Crim.R. 11(C) which relate to the waiver of constitutional rights, i.e. the Fifth Amendment privilege against self-incrimination, the right to a trial by jury, the right to confront one's accusers, the right to compulsory process of witnesses, and the right to be proven guilty beyond a reasonable doubt. State v. Ballard (1981), 66 Ohio St.2d 473,423 N.E.2d 115, paragraph one of the syllabus; State v. Colbert (1991),71 Ohio App.3d 734, 595 N.E.2d 401; State v. Foster, 8th Dist. No. 81309, 2002-Ohio-7072. As to the nonconstitutional requirements of Crim.R. 11, only substantial compliance is required. State v. Nero
(1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474. Failure to strictly comply with Crim.R. 11(C)'s constitutional requirements and/or substantially comply with its nonconstitutional requirements requires reversal of the conviction and sentence."
 {¶ 20} At the plea hearing, the trial court first asked appellant if he thoroughly went over the plea form with his attorney to which appellant responded "yes." (Plea Tr. 3). The court next went through the form with appellant explaining that it stated appellant wished to withdraw his not guilty plea and enter a plea of guilty to attempted aggravated murder, aggravated robbery, kidnapping, with a firearm specification of three years. (Plea Tr. 3). Appellant stated that he understood the form. (Plea Tr. 4).
 {¶ 21} The court then informed appellant that by pleading guilty he was giving up certain constitutional rights including, "the right to a trial by jury; the right to have the state prove each element of each charge against you; the right to confront any witness that would testify against you; the right to compel witnesses to testify on your *Page 4 
own behalf; and the right not to testify at trial or any other proceeding if you so desire." (Plea Tr. 4). Appellant stated he understood that he was giving up these rights. (Plea Tr. 4).
 {¶ 22} The court next informed appellant that if he had a trial and was convicted he would have the right to appeal, which he was giving up, and appellant stated he understood. (Plea Tr. 4).
 {¶ 23} Next, the court informed appellant that upon acceptance of his plea it could sentence him to one through ten years on each count plus three years on the firearm specification for a total prison term of 33 years. (Plea Tr. 5). And the court informed him of the potential fines he faced. (Plea Tr. 5). The court further explained that he was not eligible for community control or probation. (Plea Tr. 5). The court additionally informed appellant about the details of his post-release control. (Plea Tr. 6-7). Appellant stated that he understood all of these things. (Plea Tr. 5-7).
 {¶ 24} The court then asked appellant if he was entering his plea freely and voluntarily, to which he responded "yes." (Plea Tr. 7). He also answered affirmatively that no one promised him anything in exchange for his plea, that no one forced him to change his plea, that everything in his plea form was explained to him, and that he was happy with the representation of his attorney. (Plea Tr. 7-8).
 {¶ 25} Appellant first asserts that the court never advised him of the nature of the charges against him or the elements of each offense. He relies on State v. Blair (1998), 128 Ohio App.3d 435, 715 N.E.2d 233, for support. In Blair, the Second District found:
 {¶ 26} "Because there is nothing in this record to support a finding that Blair was ever advised, by anyone, of the nature of the charge of attempted rape — that is, what the state would have had to prove to convict him — we agree with Blair that the trial court erred in accepting his plea. A defendant's mere affirmative response to the question whether he understands the nature of the charge against him, without more, is insufficient to support the necessary determination that he understands the nature of the charge against him." Id. at 438. *Page 5 
 {¶ 27} But at least one other court has held otherwise. In State v.Parker, 8th Dist. No. 82687, 2004-Ohio-2976, at ¶ 26 (abrogated on other grounds in State v. Hull, 110 Ohio St.3d 183, 852 N.E.2d 706,2006-Ohio-4252), the court held:
 {¶ 28} "[C]ourts are not required to explain the elements of each offense, or to specifically ask the defendant whether he understands the charges, unless the totality of the circumstances shows that the defendant does not understand the charges. State v. Kavlich (June 15, 2000), Cuyahoga App. No. 77217, citing State v. Rainey (1982),3 Ohio App.3d 441, 442, 446 N.E.2d 188; State v. Swift (1993),86 Ohio App.3d 407, 412, 621 N.E.2d 513, jurisdictional motion overruled (1993),67 Ohio St.3d 1410, 615 N.E.2d 1044. Thus, Parker's reliance on State v.Blair (1998), 128 Ohio App.3d 435, 715 N.E.2d 233, for the proposition that the record must reflect that the defendant was advised as to what the State would have to prove to convict him lacks merit. See, also,State v. Philpott (Dec. 14, 2000), Cuyahoga App. No. 74392 (rejectingBlair's holding that defendant must be advised as to `what the state would have to prove to convict')."
 {¶ 29} In another Eighth District case, the court held:
 {¶ 30} "In order to ascertain the defendant's understanding of the charges against him, the court `must decide whether defendant's counsel, or someone else, provided defendant with information or notice of the charges. To do so, we look at all the particular facts and circumstances surrounding the case.' State v. Carter (1979), 60 Ohio St.2d 34, 38. There is a presumption, however, that the defense counsel did inform the defendant of the nature of the charges: `"even without such express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.'" Carter at 38, quoting Henderson v. Morgan (1976),426 U.S. 637. However, `it would appear that the burden upon the trial court becomes greater once there is an indication that the defendant is confused.' State v. Swift (1993), 86 Ohio App.3d 407, 413."Philpott, 8th Dist. No. 74392.
 {¶ 31} In this case then, there is a presumption that appellant's counsel *Page 6 
informed him of the nature of the charges against him. The record indicates that plea negotiations had been going on between appellant and plaintiff-appellee, the State of Ohio, for some time prior to his change of plea. Also, the record reflects that appellee provided appellant with the statement of one of his codefendants which set out the details of the crime. It is reasonable to presume that appellant's counsel discussed the statement with appellant. Furthermore, before appellant was bound over to the general division of the common pleas court, he had a bindover hearing in juvenile court. At that hearing, the facts of the case were discussed. Lastly, there was no indication at appellant's plea hearing that he was confused about the charges against him. In fact, appellant acknowledged that he thoroughly went over his plea form with his attorney, which included a list of the offenses and specification to which he pleaded guilty. Thus, appellant's argument that the court should have informed him of the elements of each offense and/or better explained the nature of the charges to him lacks merit.
 {¶ 32} Appellant next contends that the court did not tell him that he faced three firearm specifications. While this is so, the court likely only advised appellant once of the firearm specification because, for purposes of sentencing, the three firearm specifications merged into one. And the court advised him that he would receive a mandatory three-year sentence for the firearm specification, which he did. Thus, the court's failure to inform appellant of all three firearm specifications does not invalidate his plea.
 {¶ 33} Appellant further contends that the court erred in lumping all of the constitutional rights he was waiving together and not ensuring that he understood each individual right. Crim.R. 11(C)(2)(c) requires the court to inform the defendant of his or her constitutional rights. The rule does not state that the court must inform the defendant of the particular right and then ask the defendant if he understands that he is waiving that right before moving on to inform him of the next right he is waiving. In this case, the court informed appellant of his constitutional rights and then, after listing these rights, asked appellant if he understood that he was giving them up by pleading guilty. (Plea Tr. 4). *Page 7 
 {¶ 34} But the court erred in listing one of the rights appellant was waiving. The court only told appellant that he was waiving, "the right to have the state prove each element of each charge against you." (Plea Tr. 4). Nowhere did the court tell appellant that the state would have to prove each element "beyond a reasonable doubt." Appellant argues that the court should have reviewed the elements of each offense with him and told him that the state would have to prove each of those elements beyond a reasonable doubt.
 {¶ 35} While the Ohio Supreme Court has not expressly held that the right to have one's guilt proven beyond a reasonable doubt is a constitutional one, other appellate districts have so held. SeeState v. Veney, 10th Dist. No. 06-AP-523, 2007-Ohio-1295, at ¶ 15 ("[W]e hold that a trial court must strictly comply with the constitutional requirements in Crim.R. 11(C)(2)(c) and explain all of the constitutional rights listed in the rule that a defendant waives by pleading guilty in a manner reasonably intelligible to the defendant, including the right to have the state prove guilt beyond a reasonable doubt."); State v. Porterfield, 11th Dist. No. 2002-T-0045, 2004-Ohio-520, at ¶ 52 (reversed on other grounds in State v.Porterfield, 106 Ohio St.3d 5, 829 N.E.2d 690, 2005-Ohio-3095) ("[T]he right to have one's guilt proven beyond a reasonable doubt is indeed a constitutional guaranty."); State v. Dixon, 2d Dist. No. 01CA17, 2001-Ohio-7075 ("The State's burden of proof, which is to prove an accused's guilt beyond a reasonable doubt, has been described as the `golden thread' that runs through the fabric of our system of justice. There is nothing in the court's oral colloquy with Defendant Dixon which contains a reference to the State's particular burden of proof or, more importantly, which demonstrates that Defendant Dixon understood that he was waiving the rights and benefits an accused derives from that burden of proof when he entered his guilty plea.")
 {¶ 36} And this court, while not directly addressing the issue, has stated that a defendant's right to have the state prove his or her guilt beyond a reasonable doubt is a constitutionally guaranteed right necessitating strict compliance with Crim.R. 11 by the trial court.Green, 7th Dist. No. 02-CA-217, at ¶ 11.
 {¶ 37} Additionally, the United States Supreme Court has held on various *Page 8 
occasions that the right to have one's guilt proven beyond a reasonable doubt is a constitutionally protected right. See Apprendi v. NewJersey (2000), 530 U.S. 466, 477-78, 120 S.Ct. 2348, 147 L.Ed.2d 435;In re Winship (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368.
 {¶ 38} Because the right to have one's guilt proven beyond a reasonable doubt is a constitutional right, the trial court was required to strictly comply with Crim.R. 11(C)(2)(c) by informing appellant that he was waiving this right by pleading guilty. It failed to so inform appellant before accepting his plea. For this reason, appellant's plea was not made in compliance with Crim.R. 11(C)(2)(c). Therefore, we conclude that it was not entered knowingly and intelligently.
 {¶ 39} Accordingly, appellant's second assignment of error has merit.
 {¶ 40} Appellant's third assignment of error states:
 {¶ 41} "DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS THE STATE OF OHIO FAILED TO BRING HIS CASE TO TRIAL WITHIN THE TIME REQUIREMENTS AS SET FORTH IN ARTICLE ONE SECTION TEN OF THE CONSTITUTION OF OHIO, AS WELL AS UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE SECTION 2945.71[.]"
 {¶ 42} Appellant alleges here that he was denied his right to a speedy trial. Appellant acknowledges that he signed a waiver of speedy trial on January 19, 2005. However, he points out that the waiver was "prospective, allowing Defendant the right to litigate any speedy trial and other issues that have arisen" prior to that day. (January 20, 2005 judgment entry). Appellant states that he was held in jail for 281 days prior to his indictment and 294 days prior to his speedy trial waiver. Thus, he contends he was denied his right to a speedy trial.
 {¶ 43} In reply, appellee asserts that the speedy trial statute does not apply to cases initiated in juvenile court until the juvenile court binds the case over to the general division. Citing State v. Moore, 7th Dist. No. 02-CA-216, 2005-Ohio-5630, at ¶ 6. Furthermore, even if the speedy trial provision of R.C. 2945.71 did apply in juvenile proceedings, which appellee does not concede, appellee argues that *Page 9 
appellant executed a waiver of speedy trial in juvenile court.
 {¶ 44} For the reasons expressed by appellee, appellant's speedy trial argument must fail. "The time for speedy trial commences to run the day after a juvenile court relinquishes jurisdiction." State v.Bickerstaff (1984), 10 Ohio St.3d 62, 67, 461 N.E.2d 892. Juveniles are not entitled to a speedy trial claim under Ohio statutes. In re: ZackeryGibbs (Mar. 13, 1998), 11th Dist. No. 97-L-067. However, the"Gibbs court explained, without deciding the issue, that if a juvenile was entitled to a speedy adjudication then the balancing test set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, would apply. This means the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant would be considered to determine whether the constitutional right to a speedy trial was violated. Gibbs, 11th Dist. No. 97-L-067."In re Ely, 7th Dist. Nos. 05-JE-50, 05-JE-58, 2005-Ohio-7063, at ¶ 14.
 {¶ 45} The juvenile court relinquished jurisdiction over appellant and transferred him to the general division of the common pleas court by judgment entry of November 16, 2004. Thus, appellant's speedy trial clock began to run on that date. Appellant filed his waiver of speedy trial in the trial court on January 19, 2005. Thus, only 64 days elapsed on his speedy trial clock, well under the 90-day speedy trial time that commenced once appellant was bound over to the general division of the common pleas court.
 {¶ 46} Furthermore, under the Barker factors, it would seem the delay that took place in juvenile court did not violate appellant's right to a speedy trial. First, on April 23, 2004, appellant executed a document in juvenile court waiving his right to a hearing within the time limits provided in Juv.R. 29. Second, there is no indication in the juvenile court record that appellant ever asserted a right to speedy trial or requested that the court proceed with an adjudicatory or bindover hearing. The court held appellant's bindover hearing on September 25, 2004, and issued its decision binding him over to the general division of the common pleas court on November 16, 2004. Third, appellant has not stated that he suffered any prejudice as a result of the delay. *Page 10 
 {¶ 47} Accordingly, appellant's third assignment of error is without merit.
 {¶ 48} Based on the merit of appellant's second assignment of error, his remaining assignments of error are moot. His first, fourth, fifth, and sixth assignments of error state, respectively:
 {¶ 49} "THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT DEFENDANT/APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA PRIOR TO THE IMPOSITION OF SENTENCE."
 {¶ 50} "DEFENDANT/APPELLANT'S TRIAL COURT COUNSEL WAS INEFFECTIVE."
 {¶ 51} "THE SENTENCE OF DEFENDANT/APPELLANT IS UNCONSTITUTIONAL IN THAT THE SAME WAS IMPOSED UPON DEFENDANT/APPELLANT FOLLOWING JUDICIAL FACT FINDING IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 52} "THE TRIAL COURT ERRED BY FAILING TO MERGE THE THREE (3) COUNTS OF THE INDICTMENT FOR PURPOSES OF SENTENCING."
 {¶ 53} For the reasons set out in appellant's second assignment of error, his guilty plea is hereby vacated. The trial court's decision is reversed and this matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.
Vukovich, J., concurs. See attached concurring opinion.
Waite, J., concurs.